UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BONNIE STUBBS,

    Plaintiff,

v.                                                                                CASE NO. 3:18-cv-116-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on January 5, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from June 11, 2014, the alleged disability onset date, through March 1, 2017, the date of the decision.[2] (Tr. 7-20, 29-45, 198, 200.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

[2] Plaintiff had to establish disability on or before December 31, 2018, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 10.)

1

## I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination and hypothetical question to the Vocational Expert ("VE") are not

supported by substantial evidence, because the ALJ failed to incorporate the opinion of Cathy Whitley, M.D., an examining physician, with regard to Plaintiff's shortness of breath upon exertion. The Commissioner responds that substantial evidence supports the ALJ's decision. The Court agrees with the Commissioner.

At step two of the five-step sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: (1) coronary artery disease ("CAD"), status post coronary artery bypass graft ("CABG"), times three, and (2) chronic obstructive pulmonary disease ("COPD"). (Tr. 12.) The ALJ then found that Plaintiff had the RFC to perform a reduced range of light work, restricting Plaintiff to "no concentrated exposure to extreme heat, respiratory irritants, or wetness/humidity," and finding her "capable of performing simple tasks with little variation that take a short period of time to learn (up to an[d] including 30 days)" and "to deal with the changes in a routine work setting." (Tr. 13.)

In doing so, the ALJ discussed Plaintiff's subjective complaints and daily activities, the treatment notes, the objective medical records, Dr. Whitley's examination findings and opinions, and the opinions of Thomas Bixler, M.D., a State agency non-examining physician. (Tr. 13-17.) The ALJ addressed Dr. Whitley's September 15, 2014 examination as follows:

> On exam, the claimant's blood pressure was 126/84. The claimant's heart demonstrated regular rhythm. There were no murmurs, gallops, or rubs. She was not in acute distress. She walked on heels and toes. She did not need assistance transferring from sitting to standing. The claimant's gait was normal. The claimant's

3

> musculoskeletal exam was wholly normal. The claimant was neurologically intact as deep tendon reflexes were normal and equal. She had full strength in all extremities. The claimant was offered a diagnosis of CAD, status post multiple vessel bypass, COPD, exertional chest pain of unclear etiology, exertional shortness of breath of unclear etiology, hypertension, and hyperlipidemia (Exhibit 5F).

(Tr. 15.) The ALJ then addressed Dr. Whitley's opinion as follows:

> Dr. Whitley opined that the claimant had limitations for mild or greater activities (Exhibit 5F). This is not an objective assessment, as it does not quantify mild or greater. The doctor was not specific as to what type of activities the claimant can engage in, whether that is lifting, walking, standing, [or] sitting, nor did the doctor provide any environmental restrictions. Without more objective meaning, I cannot give weight to this statement.

(Tr. 17.) Further, the ALJ noted that the reviewing physician, Dr. Bixler, "opined that the claimant [was] capable of medium work"; however, "[h]earing level evidence establishe[d] greater limitations," and, thus, the ALJ gave Dr. Bixler's opinions "little weight." (*Id.*) The ALJ concluded that his RFC determination was supported by his "thorough review of the medical evidence of record, Dr. Whitley's fairly normal examination, and normal cardiac diagnostic studies after the claimant's CABG." (*Id.*)

The ALJ's RFC determination and hypothetical question to the VE are supported by substantial evidence. First, the ALJ did not err in his evaluation of Dr. Whitley's opinion. Dr. Whitley opined that Plaintiff had "limitations for activities requiring mild or greater exertion" (Tr. 385), but, as the ALJ pointed out, Dr. Whitley did not quantify "mild or greater," did not specify what types of

4

activities Plaintiff could engage in or was limited in, and did not provide any environmental restrictions (*see* Tr. 17). As such, the ALJ was justified in discounting Dr. Whitley's statement.

To the extent Plaintiff argues that the ALJ erred in failing to state "what weight was given to Dr. Whitley's overall assessment" (Doc. 20 at 5), this argument is misplaced, because there was no "overall assessment" that the ALJ failed to weigh. Dr. Whitley's statement that Plaintiff had "limitations for activities requiring mild or greater exertion" was the only statement contained in her Medical Source Statement ("MSS"). (Tr. 385.) Further, Dr. Whitley's examination was generally unremarkable. (*See* Tr. 383-85.) It revealed, in relevant part:

> CHEST AND LUNGS: She has a midline sternal scar with several small scars across her lower chest. Normal AP diameter. Clear to auscultation. Percussion normal. No significant chest wall abnormality.
> HEART: Regular rhythm. No murmur, gallop, or rub audible.

(Tr. 384.)

In light of these unremarkable examination findings, it appears that Dr. Whitley's MSS was based on Plaintiff's subjective complaints. (*See* Tr. 382-83 ("The claimant complains of shortness of breath on exertion. She had actually noticed this for several months prior to her heart attack. She had been treated for pneumonia in 04/13. She states that she gets short of breath with walking a couple of blocks. She thinks this is actually somewhat better since she quit smoking.").) Also, while Dr. Whitley diagnosed Plaintiff with exertional shortness

of breath and exertional chest pain, she noted that the etiology of both of these diagnoses was unclear. (Tr. 385.) Based on the foregoing, the ALJ did not err in his evaluation of Dr. Whitley's opinion.

Aside from "Dr. Whitley's fairly normal examination," as the ALJ noted, his RFC determination is also supported by the medical evidence of record, including Plaintiff's normal cardiac diagnostic studies after the claimant's CABG.[3] (Tr. 17.) The ALJ explained:

> I have thoroughly reviewed the record and find no cogent evidence that this claimant is disabled within the meaning of the Regulations. In terms of the claimant's alleged CAD, the objective medical evidence does not suggest that her symptoms are such that would preclude her from all work activity. In July 2014, the claimant was in cardiac urgency requiring CABG. A June 2014 catherization revealed a normal ejection fraction of 55 to 60 percent (Exhibit 6F). Since this time, the claimant took a significant period of time to establish primary care. Her initial October 2014 primary care visit revealed a normal examination from a cardiac perspective (Exhibit 6F). An October 2014 emergency room visit for chest pain did not reveal any significant findings. An electrocardiogram showed normal sinus rhythm and normal PR intervals (Exhibit 6F). A January 2015 nuclear stress test revealed normal MPI, fair exercise tolerance and a normal left ventricular ejection fraction of 67 percent (Exhibit 7F). By December 2015, exams streamlined and were generally reflective that the claimant was stable. The claimant's heart sounds were normal, S1 and S2 were normal with no rubs or gallops. There was no evidence of cyanosis or edema (Exhibit 9F). December 2015 and February 2016 examinations demonstrated normal heart functions. Even more, the claimant did not have any angina complaints nor did

---

[3] In formulating the RFC and hypothetical questions, the ALJ was not required to adopt the findings or opinions of any particular medical source because the responsibility for assessing the RFC rests with the ALJ. *Kopke v. Astrue*, 2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)).

> she report symptoms of dizziness, lightheadedness, or falling, as she testified to at hearing (Exhibit 10F). A July 2016 Doppler study revealed there was no hemodynamically significant peripheral vascular disease involving the lower extremities (Exhibit 13F). Overall, the objective medical evidence has revealed that after her CABG, the claimant has not had any other acute issues. Cardiac diagnostic testing have [sic] since been within normal limits. Her exams are normal and demonstrate normal heart functions. She is neurologically intact. She does not have any edema or any other evidence of cardiac dysfunction. Overall, my [RFC] accommodates for any symptoms she may experience.

(Tr. 16.)

The ALJ's above-quoted findings are supported by substantial evidence. (*See, e.g.*, Tr. 298 (noting ejection fraction of 55–60 percent), Tr. 401, Tr. 416, Tr. 523-24, Tr. 527-28, Tr. 532, Tr. 535, Tr. 557 (noting a normal stress ECG), Tr. 562 ("No acute cardiopulmonary disease."), Tr. 575, Tr. 591, Tr. 605, Tr. 659-60, Tr. 694, Tr. 701, Tr. 713, Tr. 730; *cf.* Tr. 34 ("I get out of breath real easy. I mean, I'm good like for the first couple of hours. . . . I'm not real speedy; but I'm not real slow, either. . . . And then, afterwards, I'll get really tired and lethargic. I want to lay down, or sit down, or something, and . . . I get dizzy sometimes with it, and I fall. I actually fell coming over here."), Tr. 36 (testifying that Plaintiff gets chest pains, lasting a few seconds to a minute, if she over-exerts herself "a lot," or when she goes to lay down or gets up in a hurry), Tr. 723 & 736 (noting shortness of breath and chest pain).)

As to Plaintiff's COPD, the ALJ stated:

> In terms of the claimant's COPD, the objective medical evidence

does not suggest that the claimant's symptoms are such that would preclude her from working. An October 2014 emergency room department visit for chest pain did not reveal any significant findings. The claimant's oxygen saturation was 100 percent. Her lungs were clear to auscultation and respirations were non-labored (Exhibit 6F). An April 2015 CT of the chest demonstrated mild chronic changes (Exhibit 7F). A July 2015 ER visit for ankle pain revealed that the claimant's pulmonary exam was normal as her lungs were clear to auscultation, and her respirations were non-labored. The claimant's breath sounds were equal. Her oxygen saturation was 100 percent (Exhibit 8F). A December 2015 exam by Dr. Murthy revealed the claimant's lungs demonstrated unlabored breathing, with no wheezing or rhonchi (Exhibit 9F). A March 2016 follow-up visit at Shands revealed that the claimant had normal pulmonary functions as breath sounds and effort was normal (Exhibit 11F). At [the] hearing, the claimant indicated that she did not suffer with COPD. Numerous providers have diagnosed this claimant with COPD and have counseled the claimant on her continued smoking and the risks faced. Overall, the record demonstrates that the claimant has normal pulmonary functions. She does not have a chronic condition, as it does not seem that she has been treated for any acute COPD exacerbations. She does not suffer from acute symptoms, as exams have generally documented normal lung functions. I have included restrictions to account for her COPD and any limitations she may experience.

(Tr. 16.)

These findings are also supported by substantial evidence in the record. (*See, e.g.*, Tr. 37 ("[W]hen I first had [COPD], it was like I was short of breath; but they determined that I don't have the COPD."), Tr. 286, Tr. 393, Tr. 403-04 (noting oxygen saturation at 100 percent and no shortness of breath), Tr. 452 (noting that an April 2015 CT scan of the chest demonstrated mild chronic changes), Tr. 475 (noting no shortness of breath), Tr. 477 (noting a normal exam and oxygen saturation at 100 percent), Tr. 597, Tr. 605, Tr. 624, Tr. 713, Tr. 730;

*see also* Tr. 333 ("No underlying history of COPD or asthma but she has been [] a long-term smoker for many years . . . ."), Tr. 371 (noting improvement in Plaintiff's activity level as of July 2014), Tr. 562 ("No acute cardiopulmonary disease.").)

Based on the foregoing, the ALJ's RFC assessment and hypothetical question to the VE are supported by substantial evidence; thus, any argument that the ALJ improperly relied on the VE's testimony is rejected. The ALJ was not required to include in the hypothetical question any limitations or opinions that he had properly rejected. *See Crawford*, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly rejected as unsupported by the record). Thus, to the extent Plaintiff argues that the hypothetical question was inconsistent with Dr. Whitley's opinion, the ALJ was not required to include opinions or statements that he had properly rejected.[4]

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are

---

[4] Interestingly, Plaintiff also appears to question the ALJ's evaluation of Dr. Bixler's opinions. However, the ALJ gave Dr. Bixler's opinions little weight, after finding that the evidence established *greater* limitations than assessed by this consultant. (Tr. 17.) Therefore, the ALJ did not rely on Dr. Bixler's opinions.

based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on February 8, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record